**The below described is SIGNED.**

**Dated: August 13, 2012**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

_____

Duane H. Gillman (#1194)
dgillman@djplaw.com
Penrod W. Keith (#4860)
pkeith@djplaw.com
Jessica Peterson (#11210)
jpeterson@djplaw.com
Patrick E. Johnson (#10771)
pjohnson@djplaw.com
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile:  (801) 415-3500
Attorneys for Duane H. Gillman,
  Chapter 7 Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>TWIN PEAKS FINANCIAL SERVICES, INC., aka KENNETH C. TEBBS, aka MNK INVESTMENTS, INC., and MNK INVESTMENTS,<br><br>                    Debtor. | Bankruptcy Case Number<br>07-25399<br>07-25401<br>(Substantively Consolidated as 07-25399)<br><br>Chapter 7 |
| DUANE H. GILLMAN, as Chapter 7 Trustee,<br>                    Plaintiff,<br>vs.<br>DEFENDANTS RE PONZI ISSUE,<br><br>                    Defendant. | Miscellaneous Adversary Proceeding<br>No. 11-08006<br><br>[Consolidated Proceeding Regarding Debtor's Ponzi Issue]<br><br>Judge R. Kimball Mosier |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO ORDER GRANTING SUMMARY JUDGMENT IN CONSOLIDATED PONZI SCHEME ISSUE**

This matter is before the Court upon the motion of the chapter 7 Trustee, Duane H. Gillman (the "Trustee"), for the entry of an order granting summary judgment in the Ponzi Scheme Issue in the above-captioned bankruptcy case and in the consolidated adversary proceeding pursuant to Fed. R. Bankr. P. 7056, and also pursuant to 11 U.S.C. §§ 323, 544, 547, 548 and 550, Fed. R. Bankr. P. 7001 and DU Civ. R. 83-7.1(a).

On June 9, 2011, the Court consolidated certain adversary proceedings and opened a miscellaneous proceeding for the purpose of determining whether the Debtor operated a Ponzi scheme. (Misc. Proc. No. 11-08006, Dkt. 1). The Trustee filed an expert report of Mark D. Hashimoto on August 30, 2011. (Dkt. 7). The Trustee brought a Motion for Summary Judgment on or about November 15, 2011. (Dkt. 10). The Trustee filed a memorandum of points and authorities in support of the Motion (Dkt. 11), a Declaration of Mark D. Hashimoto in support of the Motion (Dkt. 9), a reply in support of the Motion (Dkt. 31), a Declaration of the Trustee in support of the Motion (Dkt. 32), a second Declaration of Mark D. Hashimoto in support of the Motion (Dkt. 33), a third Declaration of Mark D. Hashimoto in support of the Motion (Dkt. 40), a second Declaration of the Trustee in support of the Motion (Dkt. 41), a supplemental memorandum in support of the Motion (Dkt. 42), and a supplemental reply in support of the Motion (Dkt. 46).

The Court, having conducted hearings on the Motion and having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and after consideration of the Motion, the relief requested therein, and the responses thereto; and this being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record at the hearing; and upon the record of the hearing, and all other pleadings and proceedings

in this case, and it appearing that the relief requested in the Motion is in the best interests of the Debtor and the Estate and that the Order sought by the Trustee should be entered contemporaneously herewith, and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

## JURISDICTION

1. This Court has jurisdiction over the subject matter and parties to this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (F), (H) and (O), 11 U.S.C. §§ 323, 544, 547, 548, and 550, Fed. R. Bankr. P. 7001 and DU Civ. R. 83-7.1(a).

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1409.

## ORDER FOR RELIEF

4. On November 9, 2007, an involuntary chapter 11 petition was filed by certain creditors of Twin Peaks Financial Services, Inc. ("Twin Peaks") and MNK Investments ("MNK") seeking to commence an involuntary chapter 11 case on behalf of both entities ("Petition Date"). (Case No. 07-25399, Dkt. 1).

5. On or about December 4, 2007, an order for relief under chapter 11 was entered for both Twin Peaks and MNK. Thereafter, on or about June 18, 2008, the two cases against Twin Peaks and MNK (Twin Peaks and MNK are collectively referred to herein as "Debtor") were substantively consolidated under case no. 07-25399. (Case No. 07-25399, Dkt. 4).

6. The case was converted to chapter 7 upon motion of the United States Trustee and by agreement by the Debtor. (Case No. 07-25399, Dkt. 138).

7. The Trustee was appointed on or about July 2, 2008. (Case No. 07-25399, Dkt. 138).

## MISCELLANEOUS PROCEEDING ON PONZI SCHEME ISSUE

8. The Trustee brought numerous adversary proceedings under 11 U.S.C. §§ 547, 548 & 550 and related state law claims in late-November to early-December 2009. *See generally*, Case No. 07-25399, Dkt. 418-604.

9. Pursuant to Rule 42 Federal Rules of Civil Procedure, made applicable by Rule 7042 Federal Rules of Bankruptcy Procedure, in order to avoid unnecessary cost and delay and to avoid prejudice to parties, the Court ordered the consolidation of numerous adversary proceedings for hearing and trial on issues related to whether the Debtor was operating a Ponzi scheme. (Case No. 11-08006, Dkt. 5).

## EXPERT TESTIMONY

10. The Trustee employed Mark D. Hashimoto ("Hashimoto") as an expert and the Estate's accountant to investigate the Debtor's finances in the two years prior to the petition date, Hashimoto reviewed extensive documents in order to formulate his opinions, and Hashimoto thereafter issued an expert report. *See* Exhibit A to Declaration of Mark Hashimoto on Ponzi Scheme Issue, Nov. 15, 2011 ("Hashimoto Dec. re Ponzi Issue") (attaching **October 8 Expert Report** and listing documents relied upon at Exhibit 2); *see* Dkt. 40, Declaration of Mark D. Hashimoto in Support of Trustee's Rule 56(e) Supplemental Support Regarding Plaintiff's Motion for Summary Judgment on Issue of Debtor's Insolvency and on Ponzi Scheme Issue ("Hashimoto Dec.") at ¶¶ 4-7, 9, 12 (noting Hashimoto is also the Trustee's accountant for these proceedings and that he reviewed, analyzed and summarized as the Trustee's accountant the same documents he replied upon for his expert reports); *see* Dkt. 41, Declaration of Duane H.

Gillman in Support of Trustee's Rule 56(e) Supplemental Support Regarding Plaintiff's Motion for Summary Judgment on issue of Debtor's Insolvency and on Ponzi Scheme Issue ("Gillman Dec.") at ¶¶ 13-14 (noting Gillman hired Hashimoto as the Trustee's accountant).

11. Plaintiff served Hashimoto's October 8 Expert Report on the defendants in this proceeding ("Defendants") on August 30, 2011. (Case No. 11-08006, Dkt. 7).

12. No Defendants submitted a rebuttal expert report or retained a rebuttal expert. *See generally*, Case No. 11-08006 Docket.

13. No Defendants conducted discovery in the consolidated proceeding, nor have any Defendants sought to depose Hashimoto in the consolidated proceeding. *See generally*, Case No. 11-08006 Docket.

### SOURCES OF FUNDING FOR THE CONSOLIDATED DEBTOR

14. The Debtor was operated by K.C. Tebbs ("Tebbs") and Chad Palmer ("Palmer"). Ex. A to Hashimoto Dec. re Ponzi Issue at 1.

15. Prior to the Debtor's bankruptcy filing on November 9, 2007, the Debtor's business operations consisted of the acquisition and sale of various pieces of real estate in Salt Lake and Utah Counties. Such real estate was acquired by loans from hard money lenders with some money advanced from the Debtor's bank accounts. Ex. A to Hashimoto Dec. re Ponzi Issue at 1; Hashimoto Dec. at ¶ 13.

16. In addition to the funds obtained from hard money lenders, the Debtor derived significant amounts of money from investment type loans acquired by the Debtor from certain third party individuals and business entities (referred to as "Investors"). No capital was contributed to the Debtor by its shareholders, rather funding for the Debtor came entirely from borrowed funds from either Investors or hard money lenders. Ex. A to Hashimoto Dec. re Ponzi

Issue at 1-2, Ex. 5; Hashimoto Dec. at ¶¶ 14-17, 19, 36; Gillman Dec. at ¶¶ 7-22 (noting Gillman interviewed Investors, consulted with Hashimoto, conducted 2004 Examinations of title companies, reviewed numerous records of the Debtor, evaluated the Debtor, the Debtor's business practices, assets, liabilities and other financial affairs of the Debtor and determined the Debtor operated a Ponzi scheme).

17.     The annual rate of returns promised to Investors ranged from 15% to 20%, with the vast majority of Investors being promised an 18% per annum interest rate. Ex. A to Hashimoto Dec. re Ponzi Issue at 1-2, 4, Ex. 5; Hashimoto Dec. at ¶¶ 25-26; Gillman Dec. at ¶¶ 7-12.

18.     In addition, most Investors were also given upfront loan fees of 2% to 5% of the amount loaned. Some upfront fees were as high as 7% of the amount loaned. Ex. A to Hashimoto Dec. re Ponzi Issue at 1-2, 4, Ex. 4; Hashimoto Dec. at ¶¶ 25-26; Gillman Dec. at ¶¶ 7-12.

19.     These Investors made loans to the Debtor under promissory notes with maturity dates which usually consisted of thirty to sixty days. Ex. A to Hashimoto Dec. re Ponzi Issue at 1-2, 4, Ex. 5; Hashimoto Dec. at ¶¶ 14-17; Gillman Dec. at ¶¶ 7-22.

20.     The combination of the high interest rate plus the loan fees on such short term investments resulted in extremely high promised rates of return for Investors which equated to an effective annual rate of return of 30% to over 200% on the money loaned. The weighted average annual rate of return for Investors was 82.71%. Ex. A to Hashimoto Dec. re Ponzi Issue at 1-2, 4, Ex. 5; Hashimoto Dec. at ¶ 27; Gillman Dec. at ¶¶ 7-12.

21. The hard money lenders were also promised interest rates of 15% to 18% per annum plus upfront loan origination fees of up to 10% of the money loaned. Ex. A to Hashimoto Dec. re Ponzi Issue at 2; Hashimoto Dec. at ¶ 18.

22. A reconstruction of the cash receipts and cash disbursements from each of the bank accounts of the Debtor from the opening of those accounts on November 16, 2005 through November 9, 2007, showed that receipts and disbursements to and from the Debtor totaled over $150,000,000.00. Ex. A to Hashimoto Dec. re Ponzi Issue at 2-3, Ex. 3; Hashimoto Dec. at ¶ 20.

23. The reconstruction also showed that nearly 80% of the cash received by the Debtor came from Investors, and, in turn, over 72% of the total funds disbursed by the Debtor went back to Investors. In contrast, only 17% of the cash received by the Debtor came from business activity, and only 23% was disbursed for business activity. Ex. A to Hashimoto Dec. re Ponzi Issue at Ex. 4; Hashimoto Dec. at ¶ 22.

24. The reconstruction clearly illustrated that the cash receipts from business operations was never sufficient at any time to cover those amounts repaid to Investors when comparing the cash receipts from business activity to the cash disbursements paid to Investors. Ex. A to Hashimoto Dec. re Ponzi Issue at Ex. 4; Hashimoto Dec. at ¶ 23.

25. Finally, the reconstruction also demonstrated that the only other source of funds which could cover this discrepancy were funds received from other Investors, and it was apparent that the Debtor had to rely on funds received from subsequent Investors to service the obligations owed to earlier Investors. Ex. A to Hashimoto Dec. re Ponzi Issue at 3-4; Hashimoto Dec. at ¶ 24.

26. Based upon the foregoing, Hashimoto testified that from November 16, 2005 through November 9, 2007 (bankruptcy petition date), the vast majority of the cash received by

the Debtor was derived from Investors. In turn, the vast majority of the cash disbursed by the Debtor during this same period went to repay Investors. While some funds disbursed from the Debtor's bank accounts were for the purchase and development of real property, and some funds deposited to the Debtor's bank came from the sale of real property, this limited amount of business activity was insufficient to fund the repayment of obligations promised to Investors. Therefore, the Debtor used funds received from subsequent Investors to repay the amounts owed to previous Investors. Ex. A to Hashimoto Dec. re Ponzi Issue at 2; Hashimoto Dec. at ¶¶ 33-35; Gillman Dec. at ¶¶ 7-22.

27. Furthermore, initial Investors received promised returns, which attracted additional Investors. For example, Paul Burningham was lured to invest with the Debtor by the success of another Investor, David Johnson, who made money with a high rate of return on short term loans. Deposition of Paul Burningham, June 29, 2011, 12:15-14:8, attached to Dkt. 42 as Exhibit 1; Gillman Dec. at ¶¶ 7-22.

28. David Johnson, in turn, learned about the Debtor through another Investor who received high returns on investments with the Debtor. Mr. Johnson relied on the success of the other Investor to invest and conducted no other due diligence before investing. Deposition of David Johnson, June 29, 2011, 9:2-11:7, attached to Dkt. 42 as Exhibit 2; Gillman Dec. at ¶¶ 7-12.

## CONCLUSIONS OF LAW

### THE DEBTOR OPERATED A PONZI SCHEME

29. A Ponzi scheme is "an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their

investments. Initial investors are actually paid the promised returns, which attract additional investors." *Jobin v. McKay (In re M & L Bus. Mach. Co.)*, 84 F.3d 1330, 1332 (10th Cir. 1996), and *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. 985, 994 (Bankr. D. Utah 1987).

30. Therefore, four characteristics of a Ponzi scheme include the following, all of which are present here:

> a. The returns to investors were not financed through the success of the underlying business venture.
>
> b. The returns to investors were taken from newly attracted investments.
>
> c. Investors were promised large returns.
>
> d. Initial investors received promised returns, which attracted additional investors.

31. The Debtor's business operations matched each of these characteristics: therefore, the Debtor operated as a Ponzi scheme.

## THE DEBTOR HAD ACTUAL INTENT TO DEFRAUD THE TRANSFEREES

32. The Debtor made the transfers or incurred the obligations that the Trustee seeks to avoid with actual intent to hinder, delay and defraud any entity to which the Debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted within the meaning of 11 U.S.C. § 548(a)(1)(A); *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 859-60 (D. Utah 1987).

33. Establishing the existence of a Ponzi scheme satisfies the intent to hinder, delay and defraud elements of section 548 as a matter of law. *See, e.g.*, *Jobin v. Ripley (In re M&L Bus. Mach. Co.)*, 198 B.R. 800, 807 (D. Colo. 1996); *Grede v. Bank of New York Mellon*, 441 B.R. 864, 881 (N.D. Ill. 2010).

34. Therefore, the elements of 11 U.S.C. § 548(a)(1)(A) are met, and the Debtor's intent to hinder, delay and defraud is inferred as a matter of law.

**---END OF FINDINGS AND CONCLUSIONS---**



**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June, 2012, a true and correct copy of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO ORDER GRANTING SUMMARY JUDGMENT IN CONSOLIDATED PONZI SCHEME ISSUE** was served via ECF Notification on the following:

Jason D. Boren - borenj@ballardspahr.com, ivoryl@ballardspahr.com, saltlakedocketclerk@ballardspahr.com

Kenneth L. Cannon - kcannon@djplaw.com, khughes@djplaw.com

Derek A. Coulter - coulterlaw@yahoo.com, derekcoulter@yahoo.com; rtateoka@coulterlaw.biz; jgerth@coulterlaw.biz; rbrown@coulterlaw.biz; sfitt@coulterlaw.biz; jbrown@coulterlaw.biz

Burton G Davis - bdavis@djplaw.com

Ian Davis - idavis@djplaw.com

Duane H. Gillman - dhgnotice@djplaw.com

Craig T. Jenson - craig@oblawpc.com

Patrick E Johnson - pjohnson@djplaw.com

Penrod W. Keith - pkeith@djplaw.com, khughes@djplaw.com

Matthew L. Moncur - moncurm@ballardspahr.com, goodalem@ballardspahr.com;saltlakedocketclerk@ballardspahr.com

Jessica G Peterson - jpeterson@djplaw.com, khughes@djplaw.com

    /s/ Kristin Hughes
Durham Jones & Pinegar